The appellate court of Illinois has convened. Thank you. Please be seated. First case this morning is case number 4-16-0695. In re Logan F. For the appellant is attorney Joel Wessel. And for the appellee is attorney John Zimmerman.  Mr. Wessel, are you ready to proceed? You're fired. May it please the court, counsel. My name is Joel Wessel. I'm with the Office of the State Appellate Defender. And I am representing Logan in this matter. This case presents two issues. Whether the state proved Logan guilty beyond a reasonable doubt, and whether trial counsel was ineffective in failing to move to suppress Logan's recorded interrogation. Now I want to talk about both issues, but I'd like to start with the lack of evidence regarding the element of sexual intent. For sexual intent, for adults, this element can simply be inferred. But the same intent cannot be imputed to minors. And here Logan was just 14 years old. And sexual gratification can therefore not be inferred. Why not? Because... Well, you see 11- and 12-year-old girls impregnated. Not everywhere, all across the country, but I mean, that happens. Well, according to the case law in the 3rd District, Henry, Donald R., all of those cases, they say that it cannot be inferred. And that's because a child's intent may not always be for the purpose of sexual gratification. It could be curiosity. It could be curiosity, as Justice Holdridge said, in Donald R. So under these circumstances, courts look to a variety of factors, none of which are determinative. They look to how close the minor is to adulthood, his maturity, how the length of the contact, whether it was under clothing or any signs of arousal, such as whether the minor asked the victim to touch him, whether he showed her any parts of his body, took off his clothing, whether there was evidence of an erection, heavy breathing, or sexual talk. Here, Logan was just 14 at the time D.R. accused him of touching her vagina. By all accounts, the contact was brief. Logan was only alone with D.R. for 15 minutes on the day in question. There was evidence that Logan never showed D.R. any parts of his body, he never took off his clothing, and he never asked D.R. to touch him. There was no evidence of an erection, no evidence of heavy breathing or sexual talk. In short, there was no overt evidence that Logan's act was sexual. Because of this, the trial court was left to speculation in adjudicating Logan. And the court mainly relied on three different things. First, the court relied on Logan's knowledge of sexuality. But as Justice Holdridge and the Third District reasoned in Donald R., knowledge of sexuality is not proof of sexual gratification, of sexual intent. It just could mean that the minor is curious. And in this case, Logan could have been curious about that or the fact that D.R. had a medical condition, which everyone in the household was aware of. And the significance the trial court placed on Logan's touch as ticklish is also misplaced. The fact that Logan's touch tickled instead of hurt, as was the sensation that she described when being cleaned by her father, does not go to the intent that Logan had. And the reference to Logan's consciousness of guilt does also not prove that he touched D.R. for the purpose of sexual gratification. What the court said regarding the consciousness of guilt is that Logan was willing to acknowledge up to a certain point, but not willing to acknowledge the ultimate act. The court is describing Logan's act, not his mental state at the time the incident occurred. The only evidence we have as to Logan's intentions was D.R.'s consistent testimony that Logan was cleaning her white discharge from her medical condition. In its brief, the state, like the trial court, simply jumps to the conclusion that Logan is guilty. Both the trial court and the state acknowledge the standard that this intent can just not be imputed to a minor, but both jump to the conclusion when declaring Logan guilty. And as a result that this element was not proven, this court should reverse Logan's adjudications. If this court, however, decides not to reverse, it should instead remand for a new trial because counsel was ineffective when failing to suppress Logan's recorded interrogation. Now I just want to set the scene really quickly. Fourteen-year-old Logan was seated alone in a small and windowless interrogation room when Detective Burnaby walked in. She told Logan that she was going to read him his rights. She then leaned in and she warmly assured him that he was not going to jail and that he was not in any trouble. She then said, have you ever seen cops or anything on TV? So you know when they say all this stuff, right? And then a few seconds later she read Logan his Miranda rights. Now, Miranda warnings are designed to impart upon the suspect the full awareness of the warnings and the rights being abandoned and the consequences that come from that abandonment. And with the detective's assurances that he was not in any trouble, not 30 seconds before she provided the warnings, Logan was without the full awareness of the rights he was abandoning and the consequences stemming from that abandonment. The state never explains how Logan could have been provided with the full awareness that the Miranda warnings are designed to provide with these assurances. And this is to say nothing of the detective's characterization of the Miranda warnings as a meaningless procedural formality when she characterized them as stuff that Logan had no doubt seen countless times on television. According to People v. Alfaro from the 2nd District, such a characterization significantly undermines the impact of the Miranda warnings. And in this situation, again, this did not leave Logan with the full awareness of the rights he was abandoning. And these serious problems were compounded with the detective's quick 12-second recitation of the warnings. Not two years ago, our Illinois Supreme Court held that a 45-second review of Miranda was quick. Here, not only were they read to Logan in 12 seconds, there was no further explanation. The detective did not ask Logan to repeat back the warnings in his own words. He was not following along on a sheet. He was not provided with a checklist. The detective's admonishments were nothing more than a ritualistic recitation of meaningless words. And under these circumstances, any adult waiver would be rendered invalid. And here we have Logan, who was 14 years old, who struggles with cognitive thought and has a diagnosis of ADHD, which requires verbal and nonverbal redirection in school. Logan's Miranda waiver was unknowing, unintelligent, and involuntary. And taken as a whole, his statements were also involuntary. As I go into a lot more detail in my brief, there are a multitude of factors when addressing the voluntariness of a statement. Here, Logan, again, was just 14. The detective also, multiple times, promised him leniency. She told him that he was not in any trouble twice. She also repeatedly said that whatever happened, it was a mistake. It was an accident. It's okay. She also, in the very beginning of the interrogation, isolated Logan from his mother, separating him from the one person that he may have relied upon for guidance and who he could ask questions of. And then later... Mr. Rogers? Yes. Can I interrupt you for a moment? The state says that the... We can't... We shouldn't second-guess this because the decision to not file a motion to suppress could have been the product of a sound trial strategy. And they point to the statement and the number of denials that Logan made during the course of the interview as evidence that it could have been supportive of Logan's case. I believe you wrote in your reply brief that that's not borne out, though, by Logan's attorney's closing argument. Can you elaborate on that? How did Logan's attorney argue the statement at the close of the case? So, if you look at his statement, what his attorney did was he was attempting to mitigate the damage. He tried to explain away Logan's admissions. He tried to explain away and explain why he behaved offensively, because he was being interrogated by an officer. He tried to explain Logan's inconsistent statements. This was... He didn't... Counsel did not champion Logan's denials as evidence of his innocence. He used the denials as more of a shield against the evidence instead of a sword. And I think the closing argument bears that out. He did not address it in depth, and he was only attempting to mitigate the damage. But even if this Court does not believe that it might have been trial counsel strategy, that strategy was plainly unreasonable for a multitude of reasons. First, as our Supreme Court has said, a defendant's incriminating statements may be the most powerful piece of evidence that can be used against him, and its effect on the trier of fact is incalculable. And here, the trial court almost exclusively relied on Logan's interrogation when finding him guilty. The court noted from the interrogation that Logan had a knowledge of sexual activity, that his account was inconsistent with D.R.'s father and his mother's, that his account was inconsistent with D.R.'s account, that he can never explain why he was in the bathroom, and that he presented a consciousness of guilt. Well, Counsel, you've already pointed out that, in your opinion, that was far too thin to justify a finding that if he did engage in those acts, he did it for sexual gratification. Couldn't trial counsel have reviewed that statement and come to that same conclusion and found that the benefits of the denials within the statement outweighed whatever risk there would be that the court could find sexual gratification from that statement? I don't believe so, Your Honor, because this was a bench trial, which was presided over by a judge who is presumed to know and follow the law. In a bench trial, and under the law, the state is tasked with proving the elements of the offense. Logan is not tasked with proving his innocence. And as a result, for counsel to try to revise the state's evidence with Logan's denials was completely unnecessary. It served no legal or practical purpose. And Logan was already denying these charges by taking this case to trial instead of pleading guilty. And not only that, Your Honors, but Logan's statement and interrogation was not only not helpful, but it was harmful. Because coupled with each of Logan's denials was a statement that I saw the white discharge, but I didn't touch her. I went to go get her dad. Any preliminary investigation by counsel would have uncovered that Logan's account was simply inaccurate. Both VR's father and Logan's mother testified that Logan was home alone with VR at the time of this incident. So by allowing the state to play this, counsel crippled Logan's credibility and harmed his chances of acquittal. If this was strategy, it was not reasonable. Let me ask you, how much is in the record? And what did counsel do with whatever was in the record regarding his ADHD and any cognitive problems he had? Nothing. Counsel did nothing. What's in the record? In the record we have from the social investigation report that Logan suffered from difficulty with cognitive thought and that he had ADHD. Filed after? Filed after, yes. So counsel, although this was the case during the case, Logan had ADHD for, I believe, a diagnosis since he was in second or third grade. I appended to the opening brief, but there was no mention of it at all at the trial. If this court, however, believes that this may have been reasonable, it should, at the very minimum, remand for an evidentiary hearing, as this court did in Alonzo O., to ask trial counsel if this was indeed a strategy. But judging by the record, judging by the interrogation and its effect and what was contained in that, it was not reasonable. It was plainly unreasonable. Unless this court has any further questions, I would ask that Logan's adjudications be reversed in the alternative, a new trial with the suppression of these statements. Thank you. Thank you. Mr. Zimmerman. May it please the court, counsel. Good morning, Your Honors. My name is John Zimmerman. I'm from the Fourth District Appellate Prosecutor's Office. I would like to actually begin on the opposite issue that counsel started with. This would be ineffective assistance. As Your Honors are aware, Strickland holds that a lawyer's representation of a defendant is not deemed to violate constitutional safeguards, unless the lawyer's performance fell below an objective standard of reasonable. And so prejudiced the defense of the case, that defendant was denied a fair trial. Defendant needs to rebut the presumption of competent representation by first establishing that his trial's attorney's performance fell below the standard of objective reasonableness. If he cannot do so, the court need not reach the issue of prejudice. Appellate counsel just came up here and began arguing prejudice rather than, as Justice Harris points out, discussing the reasonable representation, which was trial strategy in this case. Let me ask you a question. Could you file a motion to suppress and lose it, and then still use the trial strategy that he appeared to be using? Could you rephrase that question? Sure. I file a motion to suppress. The judge listens to it, says, no, I think warnings are adequate, and he knew what he was doing. Then you have a trial. At the trial, could you argue the same strategy, i.e., lack of evidence of sexual gratification? In this case, yes, Your Honor. Then why is it objectively reasonable to skip that step when I would say that most attorneys would see this as a problematic statement, i.e., that there are some things wrong with it? Yes, Your Honor. I happen to think there are a lot of things wrong with it, but anybody would concede that a question ought to pop up in your mind about how well he was advised and how well-informed he was and whether he voluntarily gave up his rights. I understand that in this instance we're talking about trial strategy, but why wouldn't your strategy be twofold? I'm going to file a motion to suppress. If I lose it, I can talk about prejudice. I can talk about lack of evidence on gratification. Yes, Your Honor. That could have been a better trial strategy, but that does not mean that the trial strategy that this attorney took was below an objective standard of reasonableness. So if we disagree with that, you lose? Well, if you look at the other evidence in this case, even if the motion to suppress was granted, our position is that the trial court could still find the respondent guilty. But the trial court wouldn't be able to consider any of the things that the defendant said in his admission. That is true, Your Honor. Did the trial court rely upon things in the admission to help him make his determination? Yes, Your Honor, he did explicitly. The State's not contesting that fact. Right. But still, obviously that was a reason. It was the defendant's word versus the victim's word. So, of course, he's going to weigh the credibility between the two and find inconsistencies some way or the other. And then that's why he was so focused on the statements of the respondent. Whereas if there were no statements by the respondent, as I previously stated, there would still be enough evidence to adjudicate him delinquent. For example, the victim testified contrary to what counsel was stating. He said the victim stated the respondent laid her down and touched her in the privates. It felt kind of funny. I believe in the interview she stated that he was digging out the white stuff with his fingers. It wasn't a consistent testimony that he was trying to clean up the white stuff. It said he touched her in the privates. It felt kind of funny. Her pants and underwear were off for the touching. The victim's mother stated that the victim told her a similar story. The victim's father discussed the day of the incident that he left, and that's when this allegedly occurred. The father said he would frequently help clean out the white stuff around her privates, and that when he did, it would hurt. Sometimes she would cry. The respondent's mother tested similarly to that. The victim said it would hurt. The detective testified about the investigation and the prior unfounded similar allegations. The advanced practice nurse, which was not discussed much in the respondent's brief, she was an expert in pediatrics and child abuse. She had a conversation with the victim where the victim told her the respondent touched her. The victim stated it tickled and did not hurt. She then described the victim's medical condition in more complex terms, and then she stated that the victim's description may be accurate as a sexual touching because if the victim's privates were touched in such a way that wasn't forceful or painful, it could tickle rather than hurt. And the definition of sexual conduct in regards to the criminal sexual abuse here is whether, as used in the charges here, it means for purpose of sexual gratification or arousal of the victim or the accused. So it's not just solely whether the accused was being aroused. Clearly this advanced practice nurse testified that it's very well possible that the minor was aroused, but she didn't know it because she doesn't have that type of mental awareness of the sexuality of the act. So the state's position is all this evidence, even without the respondent's video, could clearly find that the respondent was adjudicated delinquent and that was a proper finding by the trial court. Counsel, if we disagree with that conclusion, let's just say that we determined that the statement should not have come in, that it should have been suppressed, that there was ineffective assistance there. Then you're left with the other things the court identified in its finding in regards to sexual gratification. If it's determined that those remaining items would have been insufficient to justify a finding of sexual gratification, could there be a remand or is that precluded on double jeopardy grounds? Are you discussing the specific findings that the trial court stated fulfilled the intent of sexual gratification, Your Honor? I'm just saying if we find that the statement should have been suppressed and on the element of sexual gratification all you have is what's in the record in terms of the evidence. Would the remaining evidence have been sufficient to support an adjudication on the element of sexual gratification such that a remand would be possible versus a reversal outright based on double jeopardy grounds? Well, the state would request, Your Honors, to make a finding, an affirmation, based on the evidence we just discussed regarding the expert's witness who found that the victim could have possibly been sexually aroused rather than remanding or reversing. Because, as Your Honors are aware, you can affirm on any basis presented in the record. So that is one method or avenue the state would request. Another discussion of trial strategy is one of the biggest issues or biggest trial tactic was to attack the mother's and the victim's credibility. And the mission of this interrogation video is relevant and helps further this defense because throughout it, Respondent is relating back to these prior unfounded charges. He's saying things like the victim's mother was trying to get him in trouble again. And there's various references through this. And if you look at Respondent's only witness, it's the DCFS investigator who testified regarding these prior unfounded allegations and was basically stating that the victim's mother lacked credibility because there was a custody dispute going on between these two families. And so that was another trial strategy that without defendants' own words to somewhat corroborate that, it lacks a lot of credence and credibility. So that was another issue. Would that DCFS caseworker have been permitted to testify to that had there been no statement? I'm not exactly sure, Your Honor. And another trial strategy was because the state's position was the case was overwhelming or at least supported finding a delinquency, that counsel needed to rebut the state's evidence. And this is similar to the Ford case where the trial court stated or the reviewing court stated as a trial tactic, moving to suppress a statement containing exculpatory matters might be viewed as counterproductive, especially given the expected testimony of a witness whose eyewitness account was particularly damning. In fact, given the strength of the state's case, Ford's only hope was for presenting a mitigating mental state was to use his own statements from the confession and to testify at trial regarding his mental state at the time of the stabbing. So here that's somewhat similar. If respondent would have gotten up on the stand to testify, as Your Honor noted, he had ADHD issues. You know, that may have affected his ability to properly answer questions to his benefit. It may have hindered his ability to properly answer questions on cross-examination. And that's another trial tactic is allowing defendants' testimony in through this video, full of exculpatory statements where he vehemently denies touching the victim rather than having him get up on the stand, being nervous, being cross-examined. I think that's a valid trial strategy that counsel enacted. What about the voluntariness of the statement, or the voluntariness of the waiver, in light of the statements that the detective made during the interview, saying you're not in any trouble. If you were curious and did something you shouldn't have, that's fine. If you're curious, that's fine. I just think something happened that was an accident, and I need to make sure. You know, it seems like all of that is negating what Miranda's all about. Yes, Your Honor. The state's position would be that as counsel's conduct was reasonable, you do not need to address the prejudicial aspects or potential prejudicial aspects of that alleged deficient representation. The state does not deny there may be certain issues with that, but we do rest on our briefs that, overall, the voluntariness was freely, without intense inducement, and we'd say the Miranda waivers were knowing and voluntary. I believe appellate counsel said it was 12 seconds. I think the actual recitation was 12 seconds, but there is some further explanation. Our view would be when the detective asks, have you seen cops, that's the detective trying to get him to relate. And then he says, yes, I know cops, so you know what I'm talking about. That's trying to further his understanding that he knows what these Miranda waivers are. So that is the state's position on those issues. That is the subjective. That might be the subjective intent of the officer. Yes. What's that got to do with how the defendant received it? Well, he acknowledged that he understood what that meant. He understood cops. Yes. Well, that statement is being utilized. Yes, I'm being. And to establish prejudice resulting from failure to file a motion to suppress, that involves the Miranda issue as well as the voluntariness. So that was somewhat what the respondent was arguing, that the motion would have been granted because of those points. But he would also have to show that the outcome of the trial would have been different had the evidence been suppressed, which I previously argued today, that he would not be able to fill that. How do we know that counsel understood that his client had cognitive perception disabilities and ADHD if it's not brought out until the dispositional report or the social service report? I do not have the answer to that, Your Honor. I know, but you argued that that would be part of trial strategy, not putting him on the stand. That is true. There is the possibility that this was discussed prior to trial, but as Your Honor noted, it's not set out explicitly in the record until that later date. So I'm not going to speculate, Your Honor. Regarding the sufficiency of the evidence, this has somewhat been overlapping between what we've been discussing. I've laid out all the evidence, and if Your Honor's deem that it was proper to have the interrogation video and evidence, and that further supports our argument that the evidence was sufficient, even though even without it, it was still sufficient. So the State's position would be that the respondent was proven or adjudicated delinquent beyond a reasonable doubt. With that being said, we would request this Court to affirm the trial court's adjudication of delinquency, and if there's no further questions. All right. Thank you, Mr. Zimmerman. Mr. Wessel, rebuttal argument? Just a few brief points, Your Honors. Regarding the State's other argument regarding trial strategy, the DCFS investigator, this is not borne out again by counsel's closing argument. Counsel does mention the DCFS investigator, but fails to mention Logan's discussion about the unfounded allegation in the interrogation. If this had been strategy, counsel, again, would have championed the fact that Logan talked about the fact that he had been accused previously by this girl's mother. This was not done during closing. And regarding the, Justice Connacht, your question regarding the DCFS investigation worker, there were several hearings regarding that testimony's admissibility. I don't believe that the interrogation had any relevance on the trial court's decision. And regarding the First District's decision in People v. Ford that the State relied upon, that case is very distinguishable. With the appellate court in Ford held that without playing the interrogation at trial, and without the defendant therefore testifying along with that interrogation, the State's evidence against Ford was overwhelming. The opposite is true in this case. Without Logan's recorded interrogation, the evidence here was very, very minimal. If there are no further questions, Your Honor? What relief did you ask for? Regarding which? Relief of the case. I asked for a reversal regarding reasonable doubt, and I asked for a new trial if this court believes that Logan was prejudiced and counsel was ineffective. Well, if we reverse unreasonable doubt, we're saying that there's not, what does that do to the idea of reverse and remand for a new hearing, and it's okay to have a new hearing because double jeopardy won't apply? Or does it apply? Your Honor, I'm not sure that issue is not brief, but I'd be happy to file a supplemental brief if you'd like. Frankly, I think that deals directly with whether or not there was ineffective assistance, and whether it should be remanded for a new hearing on that basis. So is the remaining evidence, other than the statement, sufficient to support the trial court's adjudication on the element of sexual gratification? As I understand your entire argument, even with the statement involved, you believe that it was insufficient. So I'm assuming if we were to take the statement out of it, it would even further strengthen your argument that the evidence was insufficient. Therefore, double jeopardy would apply. Would that be the extent of your argument, then? I would believe so, yes. Okay. Thank you. All right. Thank you, counsel. The case will be taken under advisement and a written decision shall issue.